UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



CHAD S. WILLIAMS,

      Plaintiff,

v.

ROOSEVELT SMITH, Federal Probation
Officer, et al.,

      Defendants.

16-CV-115
DECISION & ORDER

CHAD S. WILLIAMS,

      Plaintiff,

v.

JUDGE PAYSON, et al.,

      Defendants.

16-CV-723
DECISION & ORDER

## INTRODUCTION

The plaintiff, Chad S. Williams, has commended multiple actions in this Court.
Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, on June 27, 2018, this Court
screened the second amended complaint in 16-CV-115 ("the first action") and the
second and fourth amended complaints filed by Williams in 16-CV-723 ("the second
action"). Docket Item 30 ("the screening order").[1] In connection with that lengthy

---

[1] Unless otherwise noted, all citations to docket items are to 16-CV-115.

screening order, this Court (1) granted Williams permission to proceed *in forma pauperis*, (2) consolidated the first and second actions, with the first action designated as the lead case, and (3) dismissed with prejudice most claims pleaded in both actions. *Id.* at 57-59. The Court also gave Williams permission to file an amended complaint only with respect to the claims against defendants Dr. Gillespie Wadsworth, Counselor Mrs. Wiggins, and Warden J.C. Holland (the "North Carolina defendants") that allegedly arose at the Butner Federal Medical Center ("Butner") in North Carolina. If Williams did not file an amended complaint as directed, the United States Marshals Service was to serve the summons and second amended complaint in the first action. *Id.* at 59. The Court also denied several motions filed by Williams, including for the appointment of counsel, for the "seizure" of a county court judge who presided over a criminal matter involving Williams (as well as that judge's assets), for discovery, and for summary judgment. *Id.*

Following entry of the screening order, Williams filed a consolidated amended complaint against defendant Shellard and the North Carolina defendants. Docket Item 33. Williams also moved for a default judgment, Docket Item 31; for reconsideration of the screening order, Docket Item 34; to file an amended complaint, Docket Item 36; for a status report "directly from [the Court]," Docket Item 37; and for expedited intervention, Docket Item 38.

On October 16, 2018, Williams appeared in person at the Clerk's Office in Rochester, New York, and demanded the issuance of summonses for defendants Wadsworth, Wiggins, Holland, and Shellard despite the fact that the Court had not yet

ordered service of the summons and operative pleading on anyone. Nonetheless, summonses were issued.

Williams subsequently moved for summary judgment, Docket Item 39; for "amended summary judgment," Docket Item 41; to amend his complaint, Docket Item 44; to appoint counsel, Docket Item 45; for "the Court [to] conduct the correct and proper procedure pertaining to the summons of [Williams's] complaint," Docket Item 49; for the defendants to be properly summonsed, Docket Item 50; for a response regarding the status of the assigned attorney general, Docket Item 51; for the issuance of subpoenas, Docket Item 52; for explanation, Docket Item 54; and for entry of default against the defendants, Docket Item 55.

The Court now addresses Williams's motions and screens the amended complaint under §§ 1915(e)(2)(B) and 1915A.[2] For the reasons that follow, the Court grants in part and denies in part Williams's second motion to amend, Docket Item 44; denies Williams's remaining motions, Docket Items 31, 34, 36, 37, 38, 39, 45, 49, 50, 51, 52, 54, and 55; severs Williams's claims against the North Carolina defendants; and transfers the claims against those defendants to the Eastern District of North Carolina.

---

[2] The Court assumes familiarity with the screening order and all prior pleadings and motions in this matter.

## DISCUSSION

### A.     Motions for Default Judgment and Entry of Default

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Entry of default under Rule 55(a) "is a mandatory prerequisite for entry of default judgment" under Rule 55(b). *U.S. v. Assorted Silver and Gold Bars and Coins Valued at Approximately $23,445.00*, No. 12-CV-6455-CJS-JWF, 2014 WL 2882444, at *2 (W.D.N.Y. June 25, 2014).

Here, the Court has not yet directed service of the summons and complaint. *See* Fed. R. Civ. P. 4(c)(3). Because the defendants have not yet been served, they have not defaulted. Williams's motions for default judgment, Docket Item 31, and for entry of default, Docket Item 44, are therefore denied.

### B.     Motion for Reconsideration

Williams appears to seek reconsideration of at least that part of the screening order dismissing his claim for return of thumb drives that he alleges were seized from his hotel room during his arrest on February 15, 2015. Docket Item 34 at 1.[3] The thumb drives allegedly contained the complete manuscripts for ten books that Williams had written. *Id.* The February 15 arrest led to a federal criminal prosecution against

---

[3] Page references are to those generated by the Court's case management and electronic filing system.

4

Williams charging him with possession of counterfeiting obligations. *See United States v. Williams*, 6:17-CR-6056-CJS.

At the time the screening order was entered, Williams had pleaded guilty to an information charging him with possession of counterfeiting obligations in violation of 18 U.S.C. § 472, and he was awaiting sentencing by the Honorable Charles J. Siragusa, United States District Judge for the Western District of New York. *See* Docket Item 30 at 3-4. On June 28, 2018, Williams was sentenced to time served and ordered to forfeit three cell phones, a laptop, and an Apple iPod. *Id.*; *Williams*, 6:17-CR-6056-CJS, Docket Items 109 (Minutes of Proceedings) and 110 (Judgment).

Because the criminal proceeding was still pending at the time it issued the screening order, this Court found that Williams's claim seeking return of the thumb drives was premature and that he could move for their return under Federal Rule of Criminal Procedure Rule 41(g). Docket Item 30 at 25-26. Williams now argues that Rule 41(g) does not apply because Judge Siragusa previously ordered the government to return the thumb drives but the government advised that it no longer had them. Docket Item 34 at 1, 3. He also argues that the criminal proceeding has ended and that the thumb drives were not the "seizure of property pertaining to the criminal case." *Id.* He seeks one million dollars for each book downloaded. *Id.* at 3.

Reconsideration of a prior order is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Systs. Inc. Secs. Litig.*, 113 F.Supp. 2d 613, 614 (S.D.N.Y.2000). "The standard for granting . . . a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data

5

that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court. . . . [A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995). Applying this standard, Williams's motion for reconsideration of the screening order is denied.

Rule 41(g) "permits a person aggrieved by the government's unlawful seizure or deprivation of property to move for specific relief: the property's return." *Adeleke v. United States*, 355 F.3d 144, 149 (2d Cir. 2004). In *Adekele*, the Second Circuit joined the unanimous conclusion of its sister circuits and held that Rule 41(g) "simply provides for the return of seized property, [it] does not waive the sovereign immunity of the United States with respect to actions for money damages relating to such property." *Id.* at 151 (collecting cases). The Second Circuit also stated that "although we continue to adhere to [*Mora v. United States*, 955 F.2d 156 (2d Cir. 1992)] and its progeny insofar as those cases recognize federal equitable jurisdiction to order the return of property pursuant to Rule 41(g) *even after the conclusion of criminal proceedings*, we here clarify that such equitable jurisdiction does not permit courts to order the United States to pay money damages when, for whatever reason, property is not available for Rule 41(g) return." *Adekele*, 355 F.3d at 151 (emphasis added). Accordingly, as he was previously advised, if Williams seeks the return of the thumb drives, he may file a motion under Rule 41(g) in the underlying criminal proceeding, 6:17-CR-06056-CJS. *See Rufu v. United States*, 20 F.3d 63, 65 (2d Cir. 1994). To the extent Williams seeks damages for the seizure of thumb drives that no longer exist or that cannot be found, *see* Docket Item 34 at 1, 3, that relief is unavailable, *see Adekele*, 355 F.3d at 151.

To the extent Williams's motion seeks reconsideration of any other parts of the screening order, it also is denied. The remaining parts of Williams's motion include little more than conclusory statements and allegations, none of which satisfy the strict standards for granting reconsideration. See *Shrader,* 70 F.3d at 257. In essence, Williams repeats the same claims and allegations made in his previous submissions and insists that the Court was incorrect when it dismissed those claims and allegations. Williams seeks to repeat his claims or use his motion as a substitute for an appeal, neither of which is appropriate in a motion for reconsideration. *See, e.g., McBeth v. Gabrielli Truck Sales, Ltd.,* 768 F.Supp.2d 392, 395 (E.D.N.Y. 2011) ("A motion for reconsideration is not a substitute for appeal[.] . . . Nor is it a second bite at the apple for a party dissatisfied with the court's ruling." (quoting *Nasca v. County of Suffolk,* 2010 WL 3713186, at *3 (E.D.N.Y. 2010)) (internal quotation marks omitted)).

Accordingly, Williams's motion for reconsideration is denied.

### C.     **Motions to Amend Complaint**

On July 26, 2018, with the permission of the Court, Williams filed an amended complaint against the North Carolina defendants. Docket Item 33. Less than a month later, however, Williams moved to file another amended complaint and attached his proposed second amended complaint. Docket Item 36. The proposed second amended complaint essentially repleads many of the same claims pled in the original pleadings and dismissed in the screening order. The Court will not reconsider these

claims and their dismissal, and it will not screen them again. Accordingly, Williams's motion to amend the complaint, Docket Item 36, is denied.[4]

On June 27, 2019, Williams again moved to amend his complaint. Docket Item 44. This time, however, he alleged that in April 2019, he "was assaulted and nearly killed by the Monroe County Jail [('MCJ')] Deputies, after writing [to this Court] in January of 2019 requesting that [the Court] intervene in [Williams's] incarceration at the MCJ and have [him] relocated to another Facility." Docket Item 44 at 1. Williams added that defendant "Shellard was secretly orchestrating to have the MCJ deputies assault . . . Williams due to the filing of civil action 16-CV-115." *Id.* at 2.

As this Court explained in its screening order, Williams's failure-to-protect claim against defendant Shellard may proceed to service. *See* Docket Item 30 at 38-42. Williams's new allegation that defendant Shellard "orchestrat[ed] to have" Williams assaulted in retaliation for Williams's filing a lawsuit contributes to his failure-to-protect claim and also raises a potential First Amendment retaliation claim against defendant Shellard. *See Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) ("[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001))). Thus, Williams may amend his complaint to include these new allegations

---

[4] Williams also filed a "supplemental complaint" unaccompanied by a motion to amend. Docket Item 43. Because Williams did not have permission from the Court to file this complaint, the Court will not consider it. *See* Fed. R. Civ. P. 15(a)(2).

against defendant Shellard. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

Williams also claims that "the MCJ denied [Williams's] witnesses from testifying at his preliminary [parole] hearing" on January 8, 2019. *Id.* The Supreme Court has held that due process requires the following at a preliminary parole revocation hearing: "notice of the alleged violations of probation or parole, an opportunity to appear and to present evidence in his own behalf, a conditional right to confront adverse witnesses, an independent decisionmaker, and a written report of the hearing." *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973) (citing *Morrissey v. Brewer*, 408 U.S. 471, 486 (1972)). The right to present evidence includes the ability to "appear and speak [o]n his own behalf" and to "bring letters, documents, or individuals who can give relevant information to the hearing officer." *Morrissey*, 408 U.S. at 487. And "a number of previous plaintiffs have sustained section 1983 suits for the denial of due process in connection with preliminary parole revocation hearings." *Davis v. N.Y. State Div. of Parole*, No. 07 CIV. 5544 (NRB), 2008 WL 3891524, at *9 (S.D.N.Y. Aug. 20, 2008) (collecting cases). Thus, the Court finds that Williams has a potential due-process claim related to his preliminary parole hearing.

But Williams does not allege the personal involvement of defendant Shellard in this alleged deprivation, nor does he identify any new defendants that he seeks to add. *See Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991) ("In this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (quoting *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977))). Thus, if Williams amends his complaint to include

allegations regarding his preliminary parole revocation hearing, he must identify the role defendant Shellard played in that deprivation, identify another defendant or other defendants that he seeks to add, or both. Either way, Williams should state exactly what each defendant did in connection with the alleged violations of his constitutional rights.

In light of Williams's new allegations regarding the parole hearing and alleged assault that occurred in 2019, he may amend his complaint **within 30 days of the date of this order.** If Williams does not file a second amended complaint, his first amended complaint, Docket Item 33, shall be served upon defendant Shellard. If Williams does file an amended complaint, the Court will screen the new allegations before directing service.[5]

### D.    Williams's Remaining Motions

As detailed above, Williams has filed numerous additional motions. His motions for a status report directly from this Court, Docket Item 36; for expedited intervention, Docket Item 38; for "the Court [to] conduct the correct and proper procedure pertaining to the summons of [Williams's] complaint," Docket Item 49; for the defendants to be properly summonsed, Docket Item 50; for a response regarding the status of the assigned attorney general, Docket Item 51; and for explanation, Docket Item 54, have no basis in law or fact and are therefore denied. Williams is cautioned against filing motions of this ilk that have no basis in law or fact or are brought only to annoy and harass the Court or other parties. If Williams continues to file motions that are frivolous,

---

[5] Williams also requests subpoenas "[p]ursuant to Rule 45 of the Federal Rules of Civil Procedure." *Id.* at 3. That request is denied as premature.

are vexatious, have no foundation in law or fact, or are brought only to annoy or harass the Court or other parties, he will be sanctioned.

Williams also moved for summary judgment, Docket Item 39; for "amended summary judgment," Docket Item 41; to appoint counsel, Docket Item 45; and for the issuance of subpoenas, Docket Item 52. Those motions are denied as premature for the reasons explained in the screening order. *See* Docket Item 30 at 51-55 (denying Williams's prior motions to appoint counsel, for discovery, and for summary judgment).

### E.    The Amended Complaint Against the North Carolina Defendants

The Court now turns to the claims against the North Carolina defendants raised in the amended complaint Williams filed with the Court's permission, Docket Item 33.

#### 1.    Factual Allegations

During Williams's federal criminal proceeding before Judge Siragusa, he was found not competent to stand trial and, pursuant to 18 U.S.C. § 4241(d)(1), he was transferred to Butner for mental health treatment. *Williams*, 6:17-CR-06056-CJS, Docket Item 37. Williams alleges that while at Butner, he wrote repeatedly and submitted electronic communications to Dr. Wadsworth, Counselor Wiggins, and Warden Holland requesting a move to another cell because his cellmate was extremely ill, acted in a hostile manner, and would masturbate in front of him and female staff members daily. Docket Item 33 ¶¶ 15-20. Williams alleges that he was later injured by his cellmate when the cellmate kicked a chair out from under Williams, causing an unspecified injury to Williams's lower back and finger. *Id.* ¶ 15. Williams also alleges that he was "sexually violated and assaulted" by his cellmate when the cellmate masturbated openly in front of a nurse. *Id.* And Williams alleges that these three

11

defendants had a duty to assist Williams when the sexual violations were brought to their attention. *Id.* ¶ 16-17, 20.

According to Williams, Dr. Wadsworth had been in contact with the prosecutor in his pending federal criminal proceeding and was told that Williams was "a bad guy." *Id.* ¶ 16. Williams says that after these discussions, Dr. Wadsworth displayed a "negative attitude" toward Williams and refused to assist him with his request to be moved to a different cell. *Id.* Likewise, Counselor Wiggins failed to address Williams's request to be moved to another cell even though she had the authority to move him. *Id.* ¶ 17.

Williams alleges that after his cell mate masturbated in front of a nurse, Williams used cleaning supplies to clean up the mess; but when Wiggins was told of this, she chastised Williams for using the cleaning supplies. *Id.* Then, when Williams mentioned his requests to be moved, Williams says, Wiggins accused him of stalking her. *Id.* According to Williams, Wiggins said this only because of Williams's previous conviction in this district in 2001. In fact, Williams says, Wiggins requested that Williams be "locked up" due to a "communication form" that was submitted where Williams "[in] around about way, indicated, due to the facial features of Mrs. Wiggins, he did not understand how she could assume someone was stalking her." *Id.* Williams alleges, however, that the hearing officer released Williams from solitary confinement because he could not find "any form of a 'threat'" as Wiggins had indicated in her incident report. *Id.*

Williams further alleges that he wrote to Warden Holland with respect to both his requests to be moved and to stop the "retaliation" from Counselor Wiggins and Dr. Wadsworth due to the "countless" complaints and grievances he filed regarding their

actions. *Id.* ¶ 20. Holland's negligence showed "evil intent," resulting in an Eighth Amendment violation. *Id.*

## 2.    Severance and Transfer

The allegations against the North Carolina defendants involve incidents that allegedly occurred at Butner in North Carolina. Venue in civil actions brought against officers or employees of the United States in their individual capacities is governed by the general venue statute, 28 U.S.C. § 1391(b):

> A civil action may be brought in—
> (1) a judicial district where any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . . or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.[6]

*See Ehlers v. C.I.A.*, No. 6:15-CV-387 (MAD/ATB), 2015 WL 3637431, at *6-7 (N.D.N.Y. June 10, 2015) (citing *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 55 (2013)); *see also Stafford v. Briggs*, 444 U.S. 527, 542-43 (1980)

---

[6] Venue in actions brought against officers, employees, or agents of the United States acting in their official capacities is governed by § 1391(e)(1):

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

(Section 1391(e)(1) does not apply to suits against officers of the United States in their individual capacity).

Because the defendants are residents of North Carolina and New York, and because the events alleged occurred in two different districts, subparagraph (3) applies to these claims. Moreover, because defendant Shellard is subject to the personal jurisdiction of the Western District of New York, venue is appropriate here as to the claims against him. The fact that venue is appropriate in this district does not end the inquiry, however. The Court may sever the North Carolina claims from the claim against Shellard and either dismiss the severed claims or transfer them to Eastern District of North Carolina where Butner is located. *See* Fed. R. Civ. P. 22; 28 U.S.C. §§ 113(a), 1404(a).

### a. *Severance*

Rule 21 of the Federal Rules of Civil Procedure provides that a court "[o]n motion or on its own, . . . may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." When deciding whether to sever, courts consider: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *N. Jersey Media Grp., Inc. v. Fox News Network, LLC*, 312 F.R.D. 111, 114 (S.D.N.Y.2015) (quoting *Oram v. SoulCycle LLC*, 979 F.Supp.2d 498, 502-03 (S.D.N.Y. 2013)). "Severance requires the presence of only one of these conditions," although courts "view severance as a procedural device to be

employed only in exceptional circumstances." *Oram*, 979 F.Supp.2d at 503 (internal quotation marks and citations omitted). "Where the administration of justice would be materially advanced by severance and transfer, a court may properly sever the claims against one or more defendants for the purpose of permitting the transfer of the action against other defendants." *Cain v. N.Y. State Bd. of Elections*, 630 F.Supp. 221, 225-26 (E.D.N.Y. 1986) (citations omitted) (explaining that "[a] claim may be severed based upon lack of a significant relationship between defendants or solely for the purpose of facilitating transfer"). The decision whether to grant a motion for severance is committed to the sound discretion of the court. *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (1988).

Based on a review of the above factors, the Court finds that severance of the claims against the North Carolina defendants is warranted. The claims against these defendants and Shellard have nothing to do with one another. They did not arise out of the same transaction or occurrence, and they do not involve common questions of law or fact. Further, entirely different witnesses and documentary proof would be required in each set of claims. Indeed, the only common denominator in the claims is the plaintiff himself, and it makes little sense to consider all of the plaintiff's claims together for that reason alone.

What is more, severance may be granted solely for the purpose of facilitating transfer. *See Cain*, 630 F. Supp. at 225-26. Here, the amended complaint alleges that defendants Wadsworth, Wiggins, and Holland work in North Carolina. *See* Docket Item

33 ¶¶ 2-4.[7] The events giving rise to the claims against them occurred in North Carolina. The evidence and witnesses are presumably in North Carolina. So it makes little sense to entertain those claims here. And although the *pro se* plaintiff may be inconvenienced by litigating his claim in North Carolina, that alone is not enough reason deny severance when other factors overwhelmingly favor severance.

The Court therefore severs the plaintiff's claims against defendant Shellard from his claims against the other defendants.

### b.    Transfer

Now that the Court has determined that severance is warranted, it must decide whether to dismiss the claims against the North Carolina defendants or to transfer them to the Eastern District of North Carolina. 28 U.S.C. § 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district . . . where it might have been brought." 28 U.S.C. § 1404(a). "Thus, '[s]ection 1404(a) proposes a two-part test. First, the transferee district must be one where jurisdiction over the defendant could have been obtained at the time suit was brought, regardless of defendant's consent. . . . Second, the transfer must be in the interest of justice and convenience of the parties and witnesses.'" *In re CenturyLink, Inc. Sec. Litig.*, No. 13 Civ. 3839 (LTS), 2014 WL 1089116, at *1 (S.D.N.Y. Mar. 18, 2014) (alterations in original) (quoting *Whitehaus Collection v. Barclay Products, Ltd.*, No. 11-cv-217, 2011 WL 4036097 (S.D.N.Y. Aug. 29, 2011)). A district court may transfer an action *sua sponte*. *See Lead Indus. Ass'n*,

---

[7]  The Court does not have any information regarding these defendants' residences, but given Butner's location, they most likely live in North Carolina.

*Inc. v. Occupational Safety & Health Admin.*, 610 F.2d 70, 79 n.17 (2d Cir. 1979)

(observing that "[t]he broad language of 28 U.S.C. § 1404(a) would seem to permit a

court to order transfer [s]ua sponte" (citation omitted)).

The claims against the North Carolina defendants initially could have been

brought in the Eastern District of North Carolina. *See* 28 U.S.C. § 1391(b). Therefore,

determining whether to transfer depends on:

> (1) the convenience of the witnesses; (2) the convenience of
> the parties; (3) the location of relevant documents and the
> relative ease of access to sources of proof; (4) the locus of
> operative facts; (5) the availability of process to compel the
> attendance of unwilling witnesses; (6) the relative means of
> the parties; (7) the forum's familiarity with the governing law;
> (8) the weight accorded the plaintiff's choice of forum; and
> (9) trial efficiency and the interests of justice.

*Steck v. Santander Consumer USA Holdings Inc.*, No. 14-6942 (JPO), 2015 WL

3767445, at *2 (S.D.N.Y. June 17, 2015) (quoting *Ritchie Capital Mgmt., L.L.C. v. U.S.*

*Bank Nat. Ass'n*, No. 14 Civ. 8513 (PAE), 2015 WL 1611391, at *4 (S.D.N.Y. Apr. 10,

2015)). A plaintiff's choice of forum "is significant and will not be disturbed, unless the

balance of factors weigh heavily in favor of transfer." *Dwyer v. Gen. Motors Corp.*, 853

F.Supp. 690, 694 (S.D.N.Y. 1994) (citing *Seagoing Uniform Corp. v. Texaco, Inc.*, 705

F.Supp. 918, 936 (S.D.N.Y. 1989)).

The only factors that weigh against transfer are the convenience of Williams and

his relative means. All other factors—especially the convenience of the witnesses, the

location of the relevant documents, the ease of access to sources of proof, and the

availability of subpoenas to compel the attendance of witnesses—weigh heavily in favor

of transfer. Indeed, all the alleged operative facts occurred at Butner. Other than

Williams's current location, his claims against Wadsworth, Wiggins, and Holland have no nexus to this district.

"Courts typically regard the convenience of the witnesses as the most important factor considering a § 1404(a) motion to transfer." *Jackson v. Avis Rent A Car Sys., LLC*, No. 14 Civ. 1658 (LLS), 2015 WL 1004299, at *3 (S.D.N.Y. Mar. 6, 2015) (quoting *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F.Supp.2d 282, 286 (S.D.N.Y. 2004)); *see also Valero Mktg. and Supply Co. v. Southcap Pipe Line Co.*, No. 06-CV-0623-MJR, 2007 WL 2229866, *2 (S.D. Ill. 2007) ("If, for instance, the convenience of the witnesses and the interest of justice point strongly in a contrary direction, the location and convenience of the parties is not controlling."). The Court "weighs more heavily the convenience of non-party witnesses than party witnesses." *McGraw-Hill Companies Inc. v. Jones*, No. 12–cv–7085 (AJN), 2014 WL 988607, at *7 (S.D.N.Y. Mar. 12, 2014). Based on Williams's allegations against the North Carolina defendants, there are presumably no witnesses to these claims who reside in this district or who are subject to the subpoena power of this Court. *See* Fed. R. Civ. 45(c)(1). And it is unlikely that any evidence will be found here.

The Court recognizes the burden that a transfer to North Carolina will have on Williams. *See Meteoro Amusement Corp. v. Six Flags*, 267 F. Supp. 2d 263, 279 (N.D. N.Y. 2003) ("[T]he relative financial hardship on the litigants and their respective abilities to prosecute or defend an action in a particular forum are legitimate factors to consider . . . ."). That factor alone is not determinative, however, and all other considerations strongly favor transfer.

Because the factors addressed above strongly favor transfer, the Court finds that the claims against the North Carolina defendants should be transferred to the Eastern District of North Carolina.[8]  A determination of whether these claims survive scrutiny under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A is best left to that court.

## CONCLUSION AND ORDER

In light of the above, it is hereby

ORDERED that Williams's motions for a default judgment, Docket Item 31; for reconsideration, Docket Item 34; to file an amended complaint, Docket Item 36; for a status report, Docket Item 37; for expedited intervention, Docket Item 38; for summary judgment, Docket Item 39; for "amended summary judgment," Docket Item 41; to appoint counsel, Docket Item 45; for "the Court [to] conduct the correct and proper procedure pertaining to the summons of [Williams's] complaint," Docket Item 49; for the defendants to be properly summonsed, Docket Item 50; for a response regarding the status of the assigned attorney general, Docket Item 51; for the issuance of subpoenas, Docket Item 52; for explanation, Docket Item 54; and for entry of default against the defendants, Docket Item 55, are DENIED; and it is further

ORDERED that the claims in the consolidated amended complaint, Docket Item 33, against defendants Wadsworth, Wiggins, and Holland are severed and transferred to the Eastern District of North Carolina, and the determination of whether those claims

---

[8] A transfer under § 1404(a) is permissible notwithstanding the lack of personal jurisdiction over the defendant, provided the transfer is to a district where the action might have been brought.  *United States v. Berkowitz,* 328 F.2d 358, 361 (3d Cir. 1964).

survive review under 28 U.S.C. § 1915(e)(2)(B) and 1915A is deferred to that court; and it is further

ORDERED that Williams's second motion to amend his complaint, Docket Item 44, is GRANTED IN PART AND DENIED IN PART; Williams may amend his complaint against defendant Shellard **within 30 days of the date of this order** as outlined above,[9] but his request for subpoenas is denied; and it is further

ORDERED that the Clerk of the Court shall send to Williams with this order a copy of the original complaint, a blank section 1983 complaint form, and the instructions for preparing an amended complaint; and it is further

ORDERED that if Williams does not file a new amended complaint within 30 days of the date of this order, the Clerk of Court shall cause the United States Marshals Service to serve the summons and consolidated amended complaint, Docket Item 33, along with this order and the order entered June 27, 2018, Docket Item 30, upon defendant Shellard at the Monroe County Jail without Williams's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Williams's favor; if, however, Williams files another amended complaint, the Court will screen the new allegations before directing service; and it is further

---

[9] Williams is advised that an amended complaint is intended to **completely replace** the prior amended complaint and thus "renders [any prior complaint] of no legal effect." *International Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, any amended complaint must include all allegations against defendant Shellard so that the new amended complaint stands alone as the only complaint that he must answer in this action.

ORDERED that this Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated:     February 11, 2020
           Buffalo, New York

_____
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE